## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAKA FATTAH, JR. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| INTERNAL REVENUE SERVICE | : | NO. 14-1092 |

## MEMORANDUM OPINION

Savage, J.                                                    August 27, 2014

Plaintiff Chaka Fattah, Jr., proceeding *pro se*, asserts claims for unauthorized tax collection actions under 26 U.S.C. § 7433; unauthorized disclosure of tax return information under both 26 U.S.C. § 7431 and the Privacy Act; and, a refund or abatement of tax penalties under 26 U.S.C. § 7422.  He alleges that Internal Revenue Service ("IRS") agents presented at his residence at 6:20 a.m. and failed to contact his attorneys in violation of 26 U.S.C. § 6304(a).  He also contends that the IRS, the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ") unlawfully disclosed his tax return information to the media.  He also seeks abatement of tax penalties which he contends the IRS wrongfully denied.

The defendants have moved to dismiss Fattah's § 7431, § 7433 and Privacy Act claims.  They argue that we lack subject matter jurisdiction because Fattah has not satisfied the jurisdictional requirements of §§ 7431 and 7433, which are limited waivers of sovereign immunity.  More specifically, they contend that Fattah cannot state a § 7433 claim because § 7433 is limited to collection actions, and the agents' visit was in connection with a criminal investigation.  The defendants contend that Fattah's § 7431

claim is time-barred.  Alternatively, they argue that he fails to state a claim because he does not allege that his tax return information was disclosed.  As to the Privacy Act, they argue that Fattah does not identify what provision of the Privacy Act he is invoking and what record was allegedly disclosed.  The United States and the IRS have also moved for summary judgment with respect to Fattah's claim for a refund of tax penalties, contending that it is premature.

In response, Fattah argues that the defendants' actions giving rise to his claim related to a collection action.[1]  He also disputes that his § 7431 claim is time-barred because when he filed for *in forma pauperis* status, the statute of limitations was tolled. He contends that the information disclosed to the media was tax return information. Lastly, he opposes the motion for summary judgment, arguing that his claim is ripe and he is entitled to a refund of tax penalties due to economic hardship and reliance on his accountant's advice.

We conclude that Fattah has sufficiently pled facts showing that his tax return information was improperly disclosed, making out a § 7431 claim.  However, he has not stated a claim under the Privacy Act.  We further conclude that we lack subject matter jurisdiction over his § 7433 claim.  Accordingly, we shall grant the motion to dismiss in part and deny it in part.

We shall deny the motion for summary judgment because there is an issue of fact concerning whether the IRS has rendered a decision with respect to Fattah's claim for refunds.

---

[1] Fattah's amended complaint named the FBI and DOJ as defendants in his claim under § 7433. He concedes that his § 7433 claim "can not remain" against defendants FBI and DOJ and "consents to their removal."   Pl.'s Br. in Supp. of Reply to Defs.' Mot. to Dismiss, at 18 ("Pl.'s Resp.") (Document No. 15-1).

**Facts**[2]

On February 29, 2012, at 6:20 a.m., two IRS agents arrived at Fattah's Center City Philadelphia residence.[3]  They served him with two subpoenas directed to the "Custodian of Records" for 259 Strategies LLC and Legal Marketing Strategies LLC.[4] While serving the subpoenas, they questioned him about unpaid tax liabilities between the years 2005 and 2010, specifically "if any payments had been made on the 2010 tax year's income liability."[5]

Later that morning, "federal agents" visited Fattah at his office.[6]  Press photographs attached to the complaint show the agents taking items from that location.[7]

On February 29, 2012, *Philly.com* published a news article and photographs reporting that the IRS was investigating Fattah's company, 259 Strategies LLC.[8]  It

---

[2] The facts and all reasonable inferences arising from them are recited from Fattah's amended complaint.

[3] Am. Compl. ¶ 10.

[4] Am. Compl. ¶ 12; Pl.'s Resp., Ex. 1 at 4, 9 (Document No. 15-5).  The subpoenas requested production of "[a]ll corporate records and books of account relative to the financial transactions of" Legal Marketing Strategies LLC and 259 Strategies LLC.  Pl.'s Resp., Ex. 1 at 4, 9.  Fattah is the sole owner of Legal Marketing Strategies LLC, a marketing firm, and 259 Strategies LLC, a management consulting firm.  Am. Compl. ¶ 79.

[5] Am. Compl. ¶ 11.

[6] Am. Compl. ¶ 42.  It is unclear whether the agents who visited Fattah's office were IRS or FBI agents.  The reference to the agents' visit to Fattah's office is as follows:

> Plaintiff alleges it would not be an undue burden on Defendants to determine how many employees or officers of their respective entities were made aware of the time and date, February 29, 2012 between 6:00am-7:00am of the arrival of special agents of the Internal Revenue Service, and separately the arrival of special agents of the Federal Bureau of Investigation.  The same is true that it would not be an undue burden to do the same regarding the federal agents['] visit later that morning to Plaintiff's office . . . .

Am. Compl. ¶ 42.

[7] *See* Am. Compl., Ex. 1 at 2.

[8] Am. Compl. ¶ 26; *id.* Ex. 2 at 1.

reported that "[a]gents from the FBI and U.S. Treasury Department served two search warrants . . . for Fattah's records" and that they "seized Fattah's records and a computer" from his office.[9]   A print version of this story ran in *The Inquirer* the following day.[10]   The reports were accompanied by photos of federal agents walking into Fattah's residence and his business office.[11]   Several other news outlets reported similar versions of the story.[12]   *The Washington Times* published an article under the headline "Lawmaker's son target of federal search," in which Shauna Frye, an IRS spokesperson, is quoted as having said that "IRS criminal investigators were at the Residences at the Ritz-Carlton . . . on official business."[13]

On February 21, 2014, Fattah submitted an application to proceed *in forma pauperis* together with his complaint.   On March 19, 2014, after a hearing, we granted the application and ordered the Clerk to file the complaint.

In the original complaint, Fattah alleged that the United States and the IRS violated 26 U.S.C. § 6304(a) by arriving at his residence before 8 a.m., violated 26 U.S.C. § 6304(a)(2) by failing to contact his legal counsel even though he had a valid Form 2848 on file with the IRS, and violated § 6304(b) by "contacting members of the

---

[9] Am. Compl., Ex. 2 at 1.

[10] Am. Compl. ¶ 26.

[11] Am. Compl. ¶ 26.

[12] Am. Compl. ¶¶ 48-49.   Fattah lists twelve websites on which he claims news articles remained as of the date of his filing.   Am. Compl. ¶ 48.   He cites to this "small, but by no means exhaustive list" of news articles in support of his "estimate[]" that between twenty-five and 100 news stories were published as a result of defendants allegedly notifying the *Philly.com* photographers about federal authorities' visits to Fattah's residence and business office.   Am. Compl. ¶ 49.   Fattah attaches two of these news articles as exhibits to his amended complaint.   The first is a printout of the March 1, 2014 *Philly.com* story.   Am. Compl., Ex. 2.   The second is a printout of a story that ran on the website for *The Washington Times* on February 29, 2012.   Am. Compl., Ex. 3.

[13] Am. Compl., Ex. 3 at 2.

media prior to, and after the visit to Plaintiff's residence . . . ."[14]  Fattah also sought a refund of tax penalties.[15]

On March 25, 2014, Fattah filed an amended complaint, adding the FBI and DOJ as defendants.  The amended complaint also asserted claims for violations of § 7431 and the Privacy Act, both related to the disclosure of information to the media.

Fattah claims injuries of emotional distress, loss of reputation and "inconvenience."  He also seeks a refund of civil penalties.  He requests $928,000 in actual damages, $9,075,000 in punitive damages, various legal costs, a "formal apology," and an order that all officers or employees of the United States who are found to have violated § 6304, § 6103 and the Privacy Act be referred for discipline within their respective government agencies.[16]

## Motion to Dismiss

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiffs.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Additionally, the plaintiff's *pro se* pleadings must be considered deferentially, affording them the benefit of the doubt where one exists.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

---

[14] Compl. ¶¶ 10-11, 29 (Document No. 5).

[15] Compl. ¶¶ 1, 21-22.

[16] Am. Compl. at request for relief.

The standard of review of a motion to dismiss made pursuant to Rule 12(b)(1) depends on whether the motion is a facial attack or a factual attack.  *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006); *Constitution Party of Pa. v. Aichele*, ___ F.3d ___, 13-1952, 2014 WL 3294855, at *7 (3d Cir. July 9, 2014). Consequently, we must distinguish between facial attacks and factual attacks.  A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court" because of some jurisdictional defect.  *Aichele*, 2014 WL 3294855, at *7.  In reviewing a facial attack, as we do in considering a Rule 12(b)(6) motion, we accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences arising from them in favor of the plaintiff.  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) (internal quotation marks omitted).

Conversely, a factual attack is "an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 2014 WL 3294855, at *7.  In other words, in a factual challenge to jurisdiction, the defendant disputes the allegations on which jurisdiction depends.  In that instance, we need not accept plaintiff's allegations as true and we may consider materials outside the complaint to determine whether the exercise of federal jurisdiction is proper.  *CNA v. United States*, 535 F.3d 132, 139, 145 (3d Cir. 2008).

*Section 7433 Claim for Violation of § 6304(a) and § 6304(a)(2)*

A taxpayer may bring an action against the United States[17] when an officer or employee of the IRS disregards, either recklessly, intentionally or negligently, any

_____

[17] The United States is the real party in interest when a taxpayer brings a suit under 26 U.S.C. § 7433 for the revenue agents' official actions. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("[A] suit is

statutory or regulatory provision *in connection with the collection of any federal tax*.   26 U.S.C. § 7433(a).   Section 7433 creates an action for damages arising only from the "collection" of taxes, not for damages arising from the investigation, assessment and determination of tax liability.   *See Hudson Valley Black Press v. IRS*, 409 F.3d 106, 112-13 (2d Cir. 2005) ("Congress ultimately enacted a narrower version of § 7433 that allowed damages actions only relating to tax collection, not to tax assessment, and only for violations of the Internal Revenue Code and its implementing regulations, not for violations of all federal law.") (citation omitted); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 411 (4th Cir. 2003) (noting, in dictum, that § 7433 does not provide a cause of action for "damages arising from the investigation and determination of tax liability"); *Hart v. United States*, Civ. A. 96-5639, 1997 WL 732466, at *1-2 (E.D. Pa. Nov. 21, 1997) (construing § 7433 narrowly and limiting it to collection of taxes only); *aff'd*, 178 F.3d 1279 (3d Cir. 1999); *Springer v. United States*, No. 08-CV-4, 2009 WL 981856, at *1 (N.D. Okla. Apr. 10, 2009).   Thus, an action under § 7433 is available only where the complained of conduct arose out of an attempt to collect an unpaid tax.

Fattah asserts two violations of the Internal Revenue Code as predicates for his § 7433 action.   First, he claims that IRS agents violated § 6304(a) when they arrived at his residence before 8 a.m.   Second, he argues that they violated § 6304(a)(2) by failing

---

against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'") (internal citations omitted); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985)("[A] suit against IRS employees in their official capacity is essentially a suit against the United States.") (citation omitted)).   Thus, to the extent Fattah seeks damages for wrongful collection activity, the United States is the only proper defendant.

to contact his legal counsel despite knowing that he had a valid Form 2848, appointing a representative as his power of attorney, on file with the IRS.[18]

The defendants argue that the agents were engaged in a criminal investigation, not a collection action, which is outside the statutory waiver of sovereign immunity in § 7433.  *See Springer*, 2009 WL 981856, at *1.[19]  According to the defendants, because Fattah's § 7433 claim "fails to fall within the applicable waiver of sovereign immunity,"[20] this court lacks subject matter jurisdiction over that claim.

The defendants submit the affidavit of Dennis Bohn, an IRS revenue officer, who states that no revenue officer was assigned to Fattah between the tax years of 2005 and 2010, and no collection summonses have been issued with respect to the liabilities for those years.[21]  Because the motion is supported by a sworn affidavit, we construe it as a factual attack under Rule 12(b)(1).   *See Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) ("[Defendant's] motion

---

[18] Fattah also asserts that the IRS failed to follow certain procedures contained in the Internal Revenue Manual.  For example, he claims the agents violated Internal Revenue Manual § 9.5.2.5.3 by not telling him they were acting as assistants to a government attorney.  However, assuming that these allegations are true, they cannot be the basis for a claim under § 7433.  In *Gonsalves v. IRS*, the First Circuit held that § 7433 does not permit taxpayers to sue the government for violations of internal IRS policies like those in the Internal Revenue Manual.   975 F.2d 13, 16 (1st Cir. 1992); *see also In re Pransky*, 318 F.3d 536, 544 n.7 (3d. Cir. 2003).   Thus, failure to follow those guidelines does not constitute a violation of a provision or regulation of the Tax Code, and is not actionable under § 7433.

[19] In *Springer*, the district court dismissed an action brought under § 7433 in which the plaintiff alleged that IRS agents took $2,000 from the $19,000 they seized from the plaintiff, whom the IRS was investigating for possible violations of internal revenue laws and against whom the IRS executed a search warrant.  The court held that the agents were not acting in connection with any collection of federal tax and, therefore, the court did not have subject matter jurisdiction over the case.  *Springer v. United States*, No. 08-CV-4, 2009 WL 981856, at *1 (N.D. Okla. Apr. 10, 2009).

[20] Defs.' Br. in Supp. of Its Mot. to Dismiss Claims Under Privacy Act and 26 U.S.C. §§ 7431, 7433, and for Summ. J. as to Remaining Claim for Refund of Penalties, at 4 ("Defs.' Mot. to Dismiss") (Document No. 14-1).

[21] Defs.' Mot. to Dismiss, Decl. of Dennis Bohn ¶¶ 6-8 (Document 14-6).

was supported by a sworn statement of facts.   It therefore must be construed as a factual, rather than a facial attack . . . .").

Where a defendant contests the jurisdictional allegations by presenting evidence, as is the case here, the plaintiff is permitted to respond with evidence supporting jurisdiction.  *Gould Elecs.*, 220 F.3d at 177.  "The factual circumstances set forth by the plaintiff . . . must meet and controvert the facts asserted by the defendant[s]."  *Int'l Ass'n of Machinists & Aerospace Workers*, 673 F.2d at 711.  If the facts asserted by the defendants are not controverted, we must determine whether we have subject matter jurisdiction based on the factual context presented by the defendants.  *Id.* at 711-12. On the other hand, if there is a dispute of material facts, we must resolve the contested facts.  *See Gould Elecs.*, 220 F.3d at 177.

Bohn's affidavit asserts that the records indicate that there were no revenue officers assigned to Fattah's case and no collection summonses had been issued.[22] Accordingly, the defendants argue, the agents' visit must have been part of a criminal investigation, which is not actionable under § 7433, because "if there were *collection* actions, the IRS's records would contain various related entries and notations."[23]  The defendants also note that the business cards submitted by Fattah as exhibits to his response indicate that the agents were criminal investigation agents, not collection revenue officers.[24]   Finally, they point out that the agents served Fattah with two

---

[22] Bohn does not actually state that the agents' visit was not in connection with a collection of an unpaid tax.  Nor does he state that a revenue officer would have been assigned, and collections summons issued, had the IRS taken a collection action against Fattah.  Instead, the defendants use his affidavit to raise an inference that the visit must have been part of a criminal investigation.

[23] Defs.' Mot. to Dismiss, at 5 (emphasis in original).

[24] Defs.' Reply Br. in Supp. of Their Mot. to Dismiss and for Summ. J, at 2 ("Defs.' Reply") (Document No. 16).

subpoenas addressed to the "custodian of records" for Fattah's respective businesses, suggesting that they were at Fattah's residence in connection with a criminal investigation.[25]

In response, Fattah contends that when they went to his apartment, the IRS agents "asked Plaintiff questions about alleged unpaid tax liabilities from tax years 2005-2010, including amounts that were already assessed . . . . As alleged, the agents 'asked if any payments had been made on the 2010 tax year's income tax liability.'"[26] According to Fattah, "[t]hese oral questions are communication[s] in connection with the collection of an unpaid tax (at the time)."[27]  In his sur-reply, he also points out that the defendants, in moving for summary judgment on his tax penalty abatement claims, concede that Fattah individually owed taxes for the years 2007 and 2010.[28]  None of these questions asked by the agents are inconsistent with a criminal investigation.

In response to Bohn's affidavit, Fattah concedes that his amended complaint does not allege "that a Revenue Officer was ever assigned to issue any document, let alone a collection summons . . . . [Nor does he allege] that he received a 'collection summons[.]'"[29]  Fattah argues that Bohn's affidavit does not "[tell] the whole story" because "certain actions or processes do not show up on IRS transcripts" and "Mr. Bohn's review of the Plaintiff's accounts and declaration do not say anything about the

---

[25] Defs.' Reply, at 2-3.

[26] Pl.'s Resp., at 8, 11 (citing Am. Compl. ¶ 11).  Fattah submits his own affidavit, stating that he is prepared to testify as to all matters referenced in his complaint and in his response to the motion to dismiss.  Pl.'s Resp., Decl. of Chaka Fattah, Jr. (Document No. 15-2).

[27] Am. Compl. ¶ 11.

[28] *See* Pl.'s Br. in Supp. of Reply to Defs.' Reply Br., at 4 ("Pl.'s Sur-Reply") (Document No. 17).

[29] Pl.'s Resp., at 17.

*security freeze* on those years."[30]   These allegations are insufficient to controvert the fact that there were no records or other evidence of collection activity with respect to Fattah's tax liabilities.

Considering the allegations in the amended complaint, Bohn's affidavit, Fattah's response and the documents attached to his response, we conclude that Fattah's allegations are insufficient to show or to infer that the agents' visit was in connection with a collection of an unpaid tax.   Section 7433 is a limited waiver of sovereign immunity, limited only to "unauthorized collection actions."   Accordingly, because we lack subject matter jurisdiction over Fattah's § 7433 claim, we shall grant the defendants' motion to dismiss that claim.

*Section 7431 Claim for Violation of § 6103*

Section 6103 proscribes the disclosure of any tax or tax return information by any United States officer or other person with access to tax returns obtained by him *in any manner* in the course of his or her employment, "or otherwise or under the provisions of [§ 6103]."  26 U.S.C. § 6103(a).  A taxpayer may bring a civil action for damages arising from the prohibited disclosure of his tax information in violation of § 6103.   *See* 26 U.S.C. § 7431.  Section 7431 claims can be brought "at any time within 2 years after the date of discovery by the plaintiff of the unauthorized disclosure." 26 U.S.C. § 7431(d).

Defendants contend that Fattah's § 7431 claim is time-barred because Fattah's amended complaint was not filed until March 25, 2014, more than two years after February 29, 2012, when the agents served the subpoenas.   They argue that the § 7431 claim added in Fattah's amended complaint does not "relate back" to his original complaint because the initial complaint and the amended complaint do not share a

---

[30] Pl.'s Resp., at 18 (emphasis in original).

"common core of operative facts" as to the § 7431 claim and the initial complaint did not give fair notice to the IRS about the impending § 7431 claim.[31]

Fattah counters that his application to proceed *in forma pauperis* was filed on February 21, 2014, eight days before the statute of limitations expired.[32]  He argues that the pendency of his *in forma pauperis* application tolled the statute of limitations.  He also contends that the amended complaint "relates back" to the original complaint under Federal Rule of Civil Procedure 15(c).[33]

Fattah first raised a § 7431 claim in his amended complaint which was filed beyond the two year limitation period.  Thus, unless the new claim relates back to the original complaint under Rule 15(c), it is time-barred.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to a pleading relates back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c).  The application of Rule 15(c)(1)(B) normally entails a "search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).  The initial pleading must give a defendant "fair notice of the general fact situation and the legal theory upon which the amending party proceeds."  *Id.*; *see also* 6A Wright *et al.*, Federal Practice & Procedure § 1497 ("Although not expressly mentioned in the rule, . . . courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading. Only if

---

[31] Defs.' Mot. to Dismiss, at 10.

[32] Pl.'s Resp., at 25.

[33] Pl.'s Resp., at 25.

the pleading has performed that function . . .  will the amendment be allowed to relate back . . . .").    Amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously."  *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).  The pivotal question for a Rule 15(c) analysis is "whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint."  *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008) (citations omitted).

Here, Fattah's original complaint adequately notified the original defendants, the United States and the IRS, of the basis of liability asserted against them in the amended complaint.  His § 7431 claim arises from the factual occurrences which implicated the defendants in his first pleading and related to the same conduct and occurrence.

In his original complaint, Fattah alleged that, within hours of the "interview," *Philly.com* published a story, which stated that "Agents from the [other federal agency] and U.S. Treasury Department served two search warrants" for Fattah's records.[34] According to Fattah, "the only persons other than Plaintiff with knowledge of the investigation" were the IRS agents and "two other federal agencies."[35]  He also alleged that an IRS spokeswoman confirmed to another news outlet that the investigators were at his residence on official business.[36]  He added that "the only way the media company would have sent a photographer to these locations early in the morning on the above date is with advance notice, which only could have been given by the [the IRS and the

---

[34] Compl. ¶ 23.

[35] Compl. ¶ 23.

[36] Compl. ¶ 23.

United States]."[37]   Later in the complaint, Fattah alleged that "employees of the IRS violated [the Internal Revenue Code section prohibiting harassment and abuse actionable under § 7433] by engaging in conduct which caused harm to Plaintiff's reputation, specifically by contacting members of the media prior to, and after, the visit to Plaintiff's residence . . . ."[38]

Fattah's amended complaint alleged the same facts under a new theory, § 7431 liability.   A new claim based on the same facts as the original pleading that only changes the legal theory will relate back to the date of the original complaint.   *See Mayle v. Felix*, 545 U.S. 644, 664 n.7 (2005) (in a case applying Rule 15 in habeas context, the Court noted that relation back is ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory") (citation omitted); *see also Koal Indus. Corp. v. Asland, S.A.*, 808 F. Supp. 1143, 1158 (S.D.N.Y. 1992) (holding that a single occurrence may give rise to many claims, and amendment that only changes legal theory or adds another claim arising from same occurrence will relate back).   Accordingly, we conclude that Fattah's § 7431 claim against the United States and the IRS relates back to the original complaint.

In his amended complaint, Fattah added two new defendants, the FBI and the DOJ.   Therefore, we must now determine whether the § 7431 claim against these newly named defendants qualifies for relation back under Rule 15(c)(1)(C).

Before an amended complaint can relate back for the purpose of overcoming the statute of limitations under Rule 15(c)(1)(C), three conditions must be met.   First, the amendment must relate to the same conduct, transaction or occurrence set out in the

---

[37] Compl. ¶ 23.

[38] Compl. ¶ 29.

original pleading.  Second, within 120 days of the filing of the original complaint, the party to be added must have received enough notice of the action to prevent prejudice in defending it.  Third, within 120 days of the filing of the original complaint, the proposed defendant knew or should have known, "but for a mistake concerning the proper party's identity," that the action would have been brought against him.  Fed. R. Civ. P. 15(c)(1)(C).  The plaintiff has the burden of demonstrating each of the three requirements.  *See Garvin v. City of Phila.*, 354 F.3d 215, 222 (3d Cir. 2003).

With respect to the third element, the Supreme Court has held that the relation back inquiry "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing [his] original complaint."  *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (emphases in original).  In other words, the question is not whether the plaintiff knew or should have known the identity of the newly-added party, but whether the proper defendant knew or should have known that it would have been named as a defendant but for an error in identity.  *Id.*

Nonetheless, what the plaintiff knew at the time he filed the original complaint is relevant in determining whether he made a mistake or made a fully informed decision to sue one party instead of another after considering the factual and legal differences between the parties.  *Id.* at 548-49, 552.  In the latter instance, there was no mistake about the proper party's identity.  On the other hand, a plaintiff's knowledge of a party's existence does not necessarily mean that he was not mistaken with respect to that party's identity.  *Id.* at 549.  According to the *Krupski* Court:

> [A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the

events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Krupski*, 560 U.S. at 549.  However, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."  *Id.* at 552.

Although the new § 7431 claim against the FBI and the DOJ arose out of the same conduct or occurrence set out in the original complaint, and the defendants received enough notice of the suit, the third requirement for relation back has not been satisfied.  Fattah has not met his burden in showing that the FBI and the DOJ "knew or should have known" that the action would have been brought against them but for a mistake regarding their identity.

Fattah's original complaint against the United States and the IRS alleged violations of § 7433 and sought a refund of tax penalties.  The proper and only defendant for both of those claims is the United States.  Fattah alleged that the IRS spokeswoman confirmed to the media that criminal investigators were at Fattah's residence on official business.  He alleged that the IRS's contact with the media prior to and after the agents' visit constituted harassment under § 6304(b), which is actionable under § 7433.

Fattah clearly knew that the FBI was involved.  He identified an FBI agent in the newspaper photograph and submitted the agent's business card, which identifies him as

an FBI special agent.[39]   His original complaint described the *Philly.com* story which reported that agents from the U.S. Department of Treasury and "[other federal agency]"[40] served two search warrants for Fattah's records.   Fattah further alleged that "two other federal agencies" had knowledge of the investigation.[41]   Fattah made a deliberate choice not to name the FBI as a defendant.   It was no mistake.   *See Krupski*, 560 U.S. at 552 ("When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."); *Palmer v. Estate of Stuart*, 274 F. App'x 58, 59 (2d Cir. 2008) (summary order) (finding that plaintiff's knowledge, at the time he filed his original complaint, of the names and relevant actions of two defendants he proposed to add to an amended complaint "defeats any claim of mistake" (citing *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994) ("holding that, where a plaintiff 'knew the identities' of the defendants she proposed to add to her complaint, 'her failure to [sue] them in the original complaint, in light of her obvious knowledge[,] . . . must be considered a matter of choice, not mistake'"))); *see also Felmine v. City of New York*, No. 09-CV-3768, 2012 WL 1999863, at *4 (E.D.N.Y. June 4, 2012) ("*Krupski* does not appear to alter the requirement that the plaintiff's failure to name the defendant within the limitations period be attributable to a 'mistake' in order to warrant relation back under Rule 15(c)(1)(C)").

---

[39] See Pl.'s Resp., at 2-3; *see id.* Ex. 3.

[40] Compl. ¶ 23.   The amended complaint changed the bracketed language to "FBI."   Am. Compl. ¶ 45.

[41] Compl. ¶ 23.

Fattah's lack of knowledge regarding the DOJ and its conduct could qualify as a mistake under *Krupski*.  *Krupski*, 560 U.S. at 549 (holding that a mistake under Rule 15 encompasses situations in which the plaintiff has general knowledge regarding a prospective defendant's conduct, but misunderstands that person's role "in the 'conduct, transaction, or occurrence' giving rise to [the] claim); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 208 (3d Cir. 2006) (finding that a "mistake" concerning the identity of the proper party under Rule 15(c) can also flow from "lack of knowledge" as opposed to just an inaccurate description).  Yet, he does not offer anything to support the fact that he lacked knowledge of the role the DOJ played or that he made a mistake by not naming the DOJ in the original complaint.[42]   In his response to the motion to dismiss, Fattah only argues that the new defendants should have been on notice of the claim because they are represented by the same counsel as the IRS.[43]   The notice requirement is separate from the "mistake" requirement and Fattah must meet both to qualify for relation back.   *See* Fed. R. Civ. P. 15 (Advisory Committee Notes to the 1991 Amendment explain that the Rule was written to allow a plaintiff "to correct a formal defect such as a misnomer or misidentification.").

We conclude that Fattah has not shown that he made a "mistake" regarding the identities of the DOJ and the FBI as that term is contemplated under Rule

---

[42] The allegations against the DOJ in the amended complaint reference the DOJ's "oversight responsibilities over investigatory agencies, such as Defendants Federal Bureau of Investigation and Internal Revenue Service" and the fact that it "has employees who possessed knowledge of the [investigation] Defendants Federal Bureau of Investigation and Internal Revenue Service planned and executed on February 29, 2012."  Am. Compl. ¶¶ 54-55.  According to Fattah, the primary source of the media leak was the IRS and "it is also possible that employees or officers of the U.S. Department of Justice and/or Federal Bureau of Investigation gave the same, additional, or supplemental information to the media outlets . . . ."  Am. Compl. ¶ 56.  These allegations are nothing more than speculation.  Indeed, Fattah even characterized them as possibilities.  They are insufficient to state a claim against the FBI and the DOJ.  Even if the claim related back as to these defendants, it would not survive a Rule 12(b)(6) challenge.

[43] Pl.'s Resp., at 29.

15(c)(1)(C)(ii).  He has offered nothing that tends to show that the FBI and the DOJ should have known that he would assert a § 7431 claim or that they would be named as original defendants.  Accordingly, because he cannot establish that the FBI and the DOJ knew or should have known that the action would have been brought against them, the new § 7431 claim cannot relate back with respect to them.

In summary, Fattah's § 7431 claim is time-barred against the FBI and the DOJ because it does not relate back to the original complaint.  Fattah's § 7431 claim against the United States and the IRS relates back to the original complaint because it arises out of the same conduct and occurrence set out in the original pleading.  Therefore, because it is not time-barred as to the United States and the IRS, we proceed to analyze the defendants' motion to dismiss for failure to state a claim.

To make out a claim under § 7431, a plaintiff must show that an "officer or employee of the United States" disclosed his tax information and that the disclosure was made knowingly or negligently.  26 U.S.C. § 7431; *Kenny v. United States*, 489 F. App'x 628, 631 (3d Cir. 2012) (citing *Venen v. United States,* 38 F.3d 100, 104 (3d Cir. 1994).

Section 6103 defines "return information" broadly as:

> *a taxpayer's identity*, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, *whether the taxpayer's return was*, is being, or will be examined or *subject to other investigation* or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or *other imposition, or offense* . . . .

26 U.S.C. § 6103(b)(2)(A) (emphases added); *see also Surgick v. Cirella*, 509 F. App'x 119, 124 (3d Cir. 2013) (noting that § 6103 "broadly defines" return information).  The

statute further defines "taxpayer identity" as "the name of a person with respect to whom a return is filed, his *mailing address*, his taxpayer identifying number . . . or a combination thereof."  26 U.S.C. § 6103(b)(6) (emphasis added).  Section 7431 carves out two exceptions to liability under § 6103: (1) disclosures resulting from a good-faith, but erroneous, interpretation of § 6103; and (2) disclosures requested by the taxpayer. 26 U.S.C. § 7431(b)(1)-(2).

Fattah appears to allege two violations of § 6103 relating to the disclosure of tax return information.  First, he claims that the defendants disclosed the existence of an investigation.[44]    Second, he alleges they disclosed the existence of collection activities.[45]

Fattah contends that the IRS "leaked" to the media that search warrants were going to be executed.[46]  He does not identify who leaked the information.  However, according to him, the only way the news photographers could have been present at the time of the agents' visits was if they had had advance notice, which Fattah contends could only have been provided by the defendants.[47]  Fattah did not speak with any reporters on February 29, 2012, and he had no advance knowledge of the impending visit.[48]    He also alleges that Shauna Frye verified his name and address to *The*

---

[44] Am. Compl. ¶ 94.

[45] Am. Compl. ¶ 94.  Fattah also references another *Philly.com* article, which he does not attach as an exhibit, that he claims accurately identifies the value of a contract to which he was a party. Am. Compl. ¶ 96.  He alleges that defendants' employees John and Jane Does 1 through 100 violated 26 U.S.C. § 6103 by disclosing the contract's value and other information pertaining to the contract. Am. Compl. ¶ 96.

[46] Am. Compl. ¶ 26; *see also* Am. Compl. ¶ 56 (alleging the IRS was the "primary source" of the information leak).

[47] Am. Compl. ¶ 26.

[48] Am. Compl. ¶ 26.

*Washington Times* reporter by confirming that IRS criminal investigators were at his residence on official business.[49]

The Third Circuit has not addressed whether an official's disclosure that a taxpayer was under investigation by the IRS constitutes an unlawful disclosure under § 6103. At least two circuit courts have. Both have concluded that disclosure of a criminal investigation of a taxpayer runs afoul of § 6103. The Fifth Circuit held that a taxpayer stated a § 6103 claim where employees of the federal government had discussed or notified the media of an investigation. *See United States v. Bischoff*, 53 F.3d 1281, at *4 (5th Cir. 1995) (vacating the dismissal of the plaintiff's § 6103 claims and stating that certain details allegedly provided to a newspaper reporter could be proven as "return information"). The Ninth Circuit affirmed a judgment in favor of a taxpayer claiming that information leaked to a newspaper reporter was a violation of § 6103. *See Miller v. United States*, 66 F.3d 220, 223 (9th Cir. 1995) (endorsing the trial court's determination that a statement to a newspaper reporter was an unlawful disclosure).

Here, ascribing a narrow interpretation to the scope of § 6103, the defendants argue that Fattah's claims under § 7431 must be dismissed because Fattah has not alleged that his "tax return information" was disclosed.[50] They contend that Fattah relies on the "logical fallacy" that the IRS agents must have disclosed the existence of a tax investigation to the media because otherwise the media would not have been there.[51]

---

[49] Am. Compl. ¶¶ 38-39; *id.*, Ex. 3.

[50] Defs.' Mot. to Dismiss, at 12.

[51] Defs.' Mot. to Dismiss, at 12-13.

The defendants also argue that Frye's statement confirming an investigation is too attenuated to constitute a "disclosure" under § 6103.[52]

What was said and to whom are factual matters to be developed and proven. The allegations that an IRS official confirmed to news reporters that criminal investigators were at Fattah's residence are sufficient to raise an inference that his information was disclosed.  Section 6103 does not limit "disclosure" to information which is an "on the record" comment published in a news article.  "Disclosure" is defined as "the making known to any person in any manner whatever a return or return information."  26 U.S.C. § 6103(b)(8).

Fattah has alleged enough to overcome a motion to dismiss his § 7431 claim. One could reasonably infer from the allegations that the media showing up at Fattah's residence before 7 a.m. was not fortuitous and was instead the result of advance notice. These allegations, if proven, together with the IRS spokesperson's acknowledgment that IRS criminal investigators had been at Fattah's residence on that day "on official business," could support a finding that there was a violation of § 6103.  Therefore, Fattah has stated a claim under § 7431 against the IRS.

*Privacy Act*

Under the Privacy Act, government agencies may not disclose "any record which is contained in a system of records by any means of communication to any person . . . ." 5 U.S.C. § 552a(b).  It provides a cause of action against government agencies that improperly disclose an individual's records.  *See* 5 U.S.C. § 552a(g)(1).

The Privacy Act defines "record" as:

---

[52] Defs.' Mot. to Dismiss, at 13.

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4).[53]

The defendants contend that Fattah's Privacy Act claim is a "feeble attempt to ride the coattails" of his § 6103 claim.[54]   They argue that Fattah's only remedy is the cause of action provided by § 7431.  We need not address this issue because Fattah concedes that his Privacy Act claim is deficient.

Fattah makes only a passing reference to the Privacy Act.  He does not allege which record was disclosed or which agency he claims disclosed the record.  However, he argues that a second amended complaint will cure the deficiencies[55] and will separate the alleged disclosures of "return information" exclusively governed by § 6103

---

[53] Courts have recognized that the Privacy Act defines "record" broadly.  *Scarborough v. Harvey*, 493 F. Supp. 2d 1, 14 (D.D.C. 2007) (citing *McCready v. Nicholson*, 465 F.3d 1, 9 (D.C. Cir. 2006)); *see also Hatfill v. Gonzales*, 505 F. Supp. 2d 33, 38 (D.D.C. 2007).  In *Hatfill*, the district court said that documents given to the media identifying the plaintiff by name or describing his or her involvement in "allegedly criminal or otherwise unsavory activity" were "about" the plaintiff under the Privacy Act's definition of record.  *Hatfill*, 505 F. Supp. 2d at 39 (citing *Scarborough*, 493 F. Supp. 2d at 16).  In that case, non-party news reporters identified 100 disclosures about the plaintiff in that case, but refused to reveal their sources.  *Id.* at 36.  The news reports quoted by the court in its Privacy Act analysis noted that police dogs became agitated when they approached the plaintiff's apartment and that investigators were trying to figure out whether the plaintiff disposed of material that may have been linked to anthrax spores.  *Id.* at 39.  The court concluded that the information in the news articles referenced the plaintiff by name and "actually [described him] in some way," thereby lending support to its conclusion that such conduct fell within the Privacy Act.  *Id.* (quoting *Scarborough*, 493 F. Supp. 2d at 16).  The court concluded that the news reports' identification of the plaintiff by name and a description of his suspected involvement in criminal or suspicious activity fell within the Privacy Act's definition of record.  *Id.* (citation omitted).

[54] Defs.' Mot. to Dismiss, at 8.

[55] Pl.'s Resp., at 21.

from those that fall under the Privacy Act.[56]   If Fattah could identify a record falling under the Privacy Act's protection and show how that record is not governed by § 6103, he could amend his complaint.  But, he does not.  Instead, he argues that he might find one.  Consequently, allowing him to amend his Privacy Act claim at this late date would be futile.

## Motion For Summary Judgment

### *Abatement of Penalties*

The defendants[57] move for summary judgment with respect to Fattah's claim for refunds of penalties for the 2007 and 2010 tax years.  They argue that we lack subject matter jurisdiction because it is undisputed that Fattah instituted this action before six months had passed after he filed his refund claim, as required by 26 U.S.C. § 6532(a).  In other words, they contend that Fattah has not satisfied the jurisdictional prerequisites for filing a refund action under § 6532.

The Internal Revenue Code requires that a taxpayer must first make a claim for a refund or credit to the IRS, 26 U.S.C. § 7422(a), and wait six months for the IRS to decide the claim before filing suit.  26 U.S.C. § 6532(a)(1).

Section 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any

---

[56] Pl.'s Resp., at 21.

[57] The only proper defendant in a civil action seeking a tax refund is the United States.  *See Murphy v. IRS*, 493 F.3d 170, 173 (D.C. Cir. 2007) ("Insofar as the Congress in 28 U.S.C. § 1346(a)(1) has waived sovereign immunity with respect to suits for tax refunds, that provision specifically contemplates only actions against the 'United States.'").  The IRS, as an agency of the United States, cannot be sued *eo nomine* ("by the name"), absent the express consent of Congress.  *See Blackmar v. Guerre*, 342 U.S. 512, 514-15 (1952).

manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

The IRS provides a form, Form 843, for taxpayers to utilize to request a refund. However, its use is not mandatory.  An informal written claim is sufficient.  *D'Amelio v. United States*, 679 F.2d 313, 315 (3d Cir. 1982); *Chocallo v. IRS Dep't of Treasury*, 145 F. App'x 746, 749 (3d Cir. 2005).  As the Third Circuit has explained:

If a taxpayer submits to the Internal Revenue Service some sort of written instrument which informs the administrative agency that the taxpayer believes that he has been subjected to an erroneous or illegal tax exaction, and that he desires a refund or credit because of such action, this is sufficient.

*D'Amelio*, 679 F.2d at 315 (quoting *Barenfeld v. United States*, 442 F.2d 371, 374 (Ct. Cl. 1971)).

It is undisputed that on November 6, 2013, Fattah, with the assistance of a CPA, filed a Form 843 requesting abatement of penalties for the 2010 tax year with the Taxpayer Advocate Service[58] ("TAS").[59]  In a letter attached to the Form 843, his CPA advised that Fattah was requesting abatement of late filing and late payment penalties for both 2007 and 2010 tax years.[60]  With respect to the 2007 year, the CPA wrote that Fattah "was under the impression that he did not have a liability in 2007.  He was told

---

[58] The TAS, or, the "Office of the Taxpayer Advocate," is a branch of the IRS aimed at assisting taxpayers in resolving problems with the IRS; identifying areas in which taxpayers are encountering difficulty with the IRS; proposing administrative changes, where possible, to mitigate issues arising from taxpayers' difficulty with the IRS; and identifying legislative changes that could also help mitigate taxpayers' difficulty with the IRS.  26 U.S.C. § 7803(c)(2)(A)(i)-(iv).

[59] Pl.'s Resp., at 36; Defs' Mot. to Dismiss, Ex. 101 at 4 (Document No. 14-3).

[60] Defs.' Mot. to Dismiss, Ex. 101 at 2.

that he was getting a refund and would not be penalized for late filing if a refund is due."[61]  In a letter to TAS, dated November 6, 2013, attaching the CPA's letter and the Form 843, Fattah noted that he was requesting an abatement of the late filing and late payment penalties.   He requested that 2010 be "prioritized, with full consideration" before 2007 was considered.[62]   Two weeks later, Fattah sent another letter to TAS, requesting that the penalty for the year 2007 be "removed due to IRS error."[63]   He attached a Form 2210, Underpayment of Estimated Tax, showing that he did not owe a penalty.   Although Fattah did not use a Form 843 for the 2007 tax year, his correspondence with the TAS was sufficient to notify the IRS officials that he was requesting a credit.  Thus, Fattah has satisfied the administrative requirement of filing a written claim as a prerequisite to commencing suit.

Fattah must do more than file a written claim.  He must also satisfy the waiting-period requirement before filing an action.

The Internal Revenue Code provides that:

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1).

---

[61] Defs.' Mot. to Dismiss, Ex. 101 at 2.

[62] Defs.' Mot. to Dismiss, Ex. 101 at 1.

[63] Defs.' Mot. to Dismiss, Ex 102 (Document No. 14-4).

The six-month waiting period between the filing of a claim for a tax refund and the commencement of suit in district court to recover on that claim gives the IRS reasonable time to process the claim and to render a decision before having to defend a suit brought on that claim.  Consequently, if a decision is made before the six-month period runs, there is no reason to wait for the balance of the six-month period to run. *Register Publ'g Co. v. United States*, 189 F. Supp. 626, 630 (D. Conn. 1960).  Indeed, the statute clearly allows the taxpayer to commence an action once a decision is rendered.

A timely-filed refund claim is a jurisdictional prerequisite to the filing of an action for a tax refund.  *See, e.g., Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340, 351-52 (3d Cir. 2000) (noting that the limitation period set forth in 26 U.S.C. § 6532(a) is jurisdictional); *Beckwith Realty Co. v. United States*, 896 F.2d 860, 862 (4th Cir. 1990); *Little People's Sch., Inc. v. United States*, 842 F.2d 570, 573 (1st Cir. 1989) ("'No suit' means no suit."); *D'Amelio*, 679 F.2d at 316 ("The [Internal Revenue] Service is without authority to so dispense with an explicit Congressional mandate.") (citation omitted); *Miller v. United States*, 949 F.2d 708, 712 (4th Cir. 1991); *Goulding v. United States*, 929 F.2d 329, 332 (7th Cir. 1991).  Therefore, Fattah must prove both that he submitted the refund claim, and that the IRS rendered an adverse decision with respect to that claim or had not made a decision within six months of his filing the claim.  *See Thomas v. United States*, 56 Fed. Cl. 112, 120 (Fed. Cl. 2003) (dismissing a premature tax refund suit for lack of subject matter jurisdiction).

Fattah filed his claim with the IRS on November 6, 2013.  He commenced this action on February 21, 2014, less than six months from filing the claim for the refund.

Therefore, unless Fattah demonstrates that the Secretary had "rendered a decision" prior to February 21, 2014, we lack jurisdiction over his action seeking abatement of tax penalties.

According to Fattah, on December 5, 2013, Debbie Landrum from TAS called him and informed him that his request for refund of the 2007 and 2010 penalties had been denied.[64]   She told Fattah to contact IRS Criminal Investigation Agent Michael Scheffer if he had any questions.   When he contacted the IRS Appeals Office by telephone, Fattah claims he was told that the decision could not be appealed "because in this case, the IRS did not mail [Fattah] a letter informing [him] of [his] appeal rights."[65] Fattah offers his phone records to demonstrate that he had spoken with Debbie Landrum and IRS Appeals.

The government contends that Fattah "is incorrect that the Secretary took such action, and he only offers his own testimony that someone told him the IRS made a 'decision.'"[66]   Yet, it offers no evidence that Fattah's requests are still pending or are under consideration.   In other words, the government has not presented any evidence to contradict Fattah's assertions.   It has only created a disputed issue of fact.   Because we cannot determine whether the IRS had rendered a decision, we shall deny the defendants' motion for summary judgment.

## Conclusion

For the above reasons, we shall grant the defendants' motion to dismiss in part and deny it in part.   We shall also deny the defendants' motion for summary judgment.

---

[64] Pl.'s Resp., at 36.

[65] Pl.'s Resp., at 36; Am. Compl. ¶ 25.

[66] Defs.' Reply, at 9.