# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAKA FATTAH, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA and | : | |
| INTERNAL REVENUE SERVICE | : | NO. 14-1092 |

## MEMORANDUM OPINION

**Savage, J.**                                                                            **May 17, 2017**

The United States moves for summary judgment on plaintiff Chaka Fattah, Jr.'s causes of action for wrongful disclosure of tax return information in violation of 26 U.S.C. § 7431 and for a refund of tax penalties.[1] Conceding that there was a wrongful disclosure, the United States contends that Fattah cannot prove he sustained damages as a result of the wrongful disclosure. It also argues that Fattah's criminal conviction for willfully failing to pay taxes precludes him from asserting that his failure to pay his 2010 taxes was not due to willful neglect—a necessary element for a refund of civil tax penalties. It further argues that Fattah cannot demonstrate reasonable cause for failing to file his tax returns and to pay his taxes on time.

Fattah cannot prevail on his claim for a refund of tax penalties. However, material factual disputes preclude summary judgment on his claim for damages as a result of the wrongful disclosure. Therefore, we shall grant the motion in part and deny

---

[1] The United States is the only proper defendant for both causes of action. Section 7431 authorizes a taxpayer to "bring a civil action for damages *against the United States*" in the event of a wrongful disclosure. 26 U.S.C. § 7431(a)(1) (emphasis added); *see also Mid-South Music Corp. v. Kolak*, 745 F.2d 23, 25 (6th Cir. 1984) ("[U]nder 26 U.S.C. § 7431(a)(1) the only proper defendant to such a suit is the United States.") (footnote omitted). Similarly, the only proper defendant in a civil action seeking a tax refund is the United States. *See Murphy v. IRS*, 493 F.3d 170, 173 (D.C. Cir. 2007) ("Insofar as the Congress in 28 U.S.C. § 1346(a)(1) has waived sovereign immunity with respect to suits for tax refunds, that provision specifically contemplates only actions against the 'United States.'"). The IRS, as an agency of the United States, cannot be sued *eo nomine* absent the express consent of Congress. *See Blackmar v. Guerre*, 342 U.S. 512, 514–15 (1952).

it in part.

## Background

The claim for wrongful disclosure arises from events surrounding the execution of search warrants in connection with an Internal Revenue Service criminal investigation of Fattah. In the pre-dawn of February 29, 2012, federal agents executed a search warrant at Fattah's home where they encountered members of the press.[2] Later that morning, they served search warrants at his office at Shulick Law Offices and at a school where he provided consulting services.[3] Two IRS agents served Fattah with subpoenas directed to the "Custodian of Records" for companies he owned, 259 Strategies, LLC and Legal Marketing Strategies, LLC.[4] The IRS agents questioned Fattah about unpaid tax liabilities, specifically asking "if any payments had been made on the 2010 tax year's income tax liability."[5]

By 11:52 A.M., *Philly.com* published a news article and photographs reporting that the IRS was investigating Fattah's company, 259 Strategies.[6] It reported that "[a]gents from the FBI and U.S. Treasury Department served two search warrants . . . for Fattah's records," and they "seized Fattah's records and a computer" from his office.[7] A print version of this story ran in *The Philadelphia Inquirer* the following day.[8] Press

---

[2] Pl.'s Reply to Defs.' Mot., & Br., to Dismiss Claims & for Summ. J., Ex. 2 (Doc. No. 15-6).

[3] Am. Compl. (Doc. No. 11) ¶ 10; Stmt. of Undisputed Facts (Doc. No. 46-2) ¶ 33 (citing Am. Compl. ¶¶ 10, 42, 45, 59; and Shulick Dep. at 23:2–6).

[4] Pl.'s Reply to Defs.' Mot., & Br., to Dismiss Claims & for Summ. J., Ex. 1 (Doc. No. 15-5); Am. Compl. ¶ 79.

[5] Am. Compl. ¶ 11.

[6] Am. Compl. ¶ 26; Pl.'s Reply to Defs.' Mot., & Br., to Dismiss Claims & for Summ. J., Ex. 2.

[7] Am. Compl., Ex. 2 at 1.

[8] Am. Compl. ¶ 26.

photographs show federal agents outside Fattah's home and Shulick Law Offices.[9] Several other news outlets reported similar versions of the story.[10] *The Washington Times* published an article under the headline "Lawmaker's son target of federal search," in which Shauna Frye, an IRS spokesperson, was quoted as saying that "IRS criminal investigators were at the Residences at the Ritz-Carlton . . . on official business."[11]

At the time of the searches, Legal Marketing Strategies had a contract to manage marketing and development for Shulick Law Offices, Delaware Valley High School (DVHS), and the Judith B. Shulick Memorial Foundation.[12] Under the contract, Shulick Law Offices paid Legal Marketing Strategies $12,000 per month.[13] Previously, 259 Strategies had a contract to provide management consulting services to DVHS.[14] DVHS had terminated the contract in the summer of 2011 after Fattah was "caught committing gross malfeasance," including using company funds for improper purposes.[15] Shulick Law Offices then entered into the contract with Legal Marketing Strategies, a company owned by the same person who owned the company whose

---

[9] Am. Compl., Ex. 1 (Doc. No. 11-1).

[10] Am. Compl. ¶¶ 48–49. Fattah lists twelve websites on which he claims news articles remained as of the date of his filing. Am. Compl. ¶ 48. He cites to this "small, but by no means exhaustive list" of news articles in support of his "estimate[]" that between twenty-five and 100 news stories were published as a result of defendants allegedly notifying the *Philly.com* photographers about federal authorities' visits to Fattah's residence and business office. Am. Compl. ¶ 49. Fattah attached two of these news articles as exhibits to his amended complaint. The first is a printout of the March 1, 2012 *Philly.com* story. Am. Compl., Ex. 2. The second is a printout of a story that ran on the website for *The Washington Times* on February 29, 2012. Am. Compl., Ex. 3.

[11] Am. Compl. Ex. 3 (Doc. No. 11-3) at 2.

[12] Mot. for Summ. J., Ex. 210 (Doc. No. 46-18).

[13] Mot. for Summ. J., Ex. 210 ¶ 2.

[14] Mot. for Summ. J., Ex. 209 (Doc. No. 46-17).

[15] Mot. for Summ. J., Ex. 211 (Doc. No. 46-19) ("Shulick Dep.") at 9:1–25, 61:8–25.

contract had been terminated for malfeasance just months earlier.[16]

At 11:22 A.M., before news coverage began, David T. Shulick, owner of Shulick Law Offices, dictated an email to Fattah, informing him that the search at the office appeared to relate to him.[17] He instructed Fattah not to contact anyone in his company until he explained to him in writing the nature of the investigation. Shulick stated, "As far as this company is concerned you are still employed, and at 1 PM you David, Mark, Ann and Cherie are expected to be discussing pipeline work."[18] Fattah did not show for the meeting.[19] Fattah stated in his deposition that, after news of the searches broke, he spoke by phone with Shulick, who told him "not to go [to the 1:00 P.M. meeting], not to go to his office or contact anybody by the company, not to go to any location."[20] In his deposition, Shulick denied the phone call occurred.[21] Instead, he testified that Fattah never returned to work and he never heard from him after the search.[22]

On February 21, 2014, Fattah, proceeding *pro se* and *in forma pauperis*, filed this action. In his original complaint, Fattah alleged that the United States and the IRS violated 26 U.S.C. § 6304(a) by arriving at his residence before 8:00 A.M., violated 26 U.S.C. § 6304(a)(2) by failing to contact his legal counsel even though he had a valid Form 2848 on file with the IRS, and violated § 6304(b) by "contacting members of the

---

[16] Mot. for Summ. J., Ex. 210.

[17] Mot. for Summ. J., Ex. 212 (Doc. No. 46-20).

[18] Mot. for Summ. J., Ex. 212.

[19] Mot. for Summ. J. Ex. 201A (Doc. No. 46-8) ("Fattah Dep. pt. 1") at 187:16–18; Shulick Dep. at 29:15–16.

[20] Fattah Dep. pt. 1 at 187:16–18.

[21] Shulick Dep. at 26:10–11.

[22] Shulick Dep. at 26:10–11, 29:15–16.

media prior to, and after the visit to Plaintiff's residence."²³ He also sought a refund of tax penalties.²⁴ On March 25, 2014, Fattah filed an amended complaint adding claims for violations of Section 7431 and the Privacy Act, both related to the disclosure of information to the media.²⁵

The defendants moved to dismiss Fattah's Section 7431, Section 7433, and Privacy Act claims and moved for summary judgment on Fattah's claim for a refund of tax penalties. We granted the motion to dismiss in part and denied it in part, and we denied the summary judgment motion. We dismissed the Privacy Act and the Section 7433 claims. Fattah's Section 7431 claim for wrongful disclosure and his claim for a refund of tax penalties survived.

Fattah was indicted on July 29, 2014, six months after he filed this action and more than two years after the execution of the searches. On September 11, 2014, we stayed this case pending the conclusion of the criminal case.²⁶ On November 5, 2015, Fattah was convicted of twenty-two criminal counts, including a willful failure to pay his 2010 taxes in violation of 26 U.S.C. § 7203.²⁷ On February 2, 2016, Fattah was

---

²³ Compl. ¶¶ 10–11, 29 (Doc. No. 5).

²⁴ Compl. ¶¶ 1, 21–22.

²⁵ Am. Compl.

²⁶ United States v. Fattah, Crim. No. 14-409. Upon conclusion of the criminal case, we issued a Scheduling Order. Scheduling Order (Doc. No. 32). The Order was amended three times to extend deadlines. *See* Am. Scheduling Order (Doc. No. 44); 2d Am. Scheduling Order (Doc. No. 47); Order (Doc. No. 54). The first extension granted the government's request to extend deadlines by sixty days to complete discovery. Am. Scheduling Order. The last two extensions were requested by Fattah, the first extending deadlines by an additional ninety days, 2d Am. Scheduling Order, and the second granting Fattah an additional ten days to respond to the motion for summary judgment, Order (Doc No. 54).

²⁷ Verdict Form (Doc. No. 234) at 7, United States v. Fattah, Crim. No. 14-409 (filed Nov. 5, 2015).

sentenced to five years in prison and ordered to pay over $1,000,000 in restitution.[28]

The parties conducted discovery. Now, the United States moves for summary judgment on Fattah's remaining claims under Section 7431 and for a refund of tax penalties.

**Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 514 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Although Fattah has responded to the United States's motion, he has not filed a Statement of Disputed Facts contesting the government's Statement of Undisputed Facts.[29] Without addressing each numbered paragraph of the Statement of Undisputed

---

[28] Judgment (Doc. No. 254) at 2, United States v. Fattah, Crim. No. 14-409 (filed Feb. 2, 2016).

[29] 2d Am. Scheduling Order ¶¶ 1(b), (c); *see also* Order (Doc. No. 54) ¶ 2 ("All remaining deadlines set forth in the Second Amended Scheduling Order shall remain in full force and effect.").

Facts and presenting controverting facts,[30] he simply states that they "are disputed."[31] The Scheduling Order warned the parties that "[a]ll material facts set forth in the Statement of Undisputed Facts served by the movant shall be deemed undisputed unless specifically controverted by the opposing party."[32]

*Pro se* litigants must comply with scheduling orders. Their *pro se* status does not excuse non-compliance. *Hurst v. City of Rehoboth Beach*, 288 F. App'x 20, 25 (3d Cir. 2008) ("Hurst represented himself, so he bore the responsibility for the failures to meet scheduling orders and to respond to discovery requests and comply with a discovery order.") (citing *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002)). When the nonmoving party fails to file a response within the specified time, he "waives the right to respond to or to controvert the facts asserted in the summary judgment motion." *Reynolds v. Rick's Mushroom Serv., Inc.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003) (quoting *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002); and citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175–76 (3d Cir. 1990)). Nevertheless, summary judgment cannot be granted as unopposed where the nonmoving party did not file a response. Even though the material facts are deemed true, the moving party still must demonstrate that it is entitled to judgment as a matter of law. *Anchorage Assocs.*, 922 F.2d at 179; *Reed*, 312 F.3d at 1195.

## Analysis

### *Refund of Penalties*

The IRS assessed penalties against Fattah for his failures to file and pay his

---

[30] *See* 2d Am. Scheduling Order ¶ 1(b).

[31] Resp. (Doc. No. 55) at 13.

[32] 2d Am. Scheduling Order ¶ 1(c).

7

2007 and 2010 taxes on time. Fattah filed his 2007 tax return on October 15, 2012, more than four years after it was due.[33] The IRS applied a tax credit from his 2011 taxes to pay his 2007 taxes and associated penalties and interest.[34] He filed his 2010 tax return on December 26, 2011, but had not filed for an extension.[35] He paid his 2010 taxes and associated penalties and interest on April 26, 2012, more than a year late.[36] Fattah now seeks refunds of the penalties assessed against him.

Civil penalties must be assessed against a taxpayer for failing to file a required tax return or for failing to pay a tax on time unless the taxpayer shows that the failure was due to reasonable cause and not due to willful neglect. 26 U.S.C. §§ 6651(a)(1), (2). To excuse a failure-to-file, the taxpayer's burden is a heavy one. *United States v. Boyle*, 469 U.S. 241, 245 (1985). A failure-to-pay and a failure-to-file are treated the same. *E. Wind Indus., Inc. v. United States*, 196 F.3d 499, 504 & n.5 (3d Cir. 1999). Thus, to prevail on his claim for a refund of the penalties, Fattah must demonstrate that his failures to file and to pay were not the result of willful neglect and he had reasonable cause.

The United States argues that Fattah's conviction for failing to pay his 2010 taxes precludes him from asserting he was not willfully neglectful in failing to file and pay his taxes that year. On November 5, 2015, Fattah was convicted of willfully failing to pay his 2010 taxes under 26 U.S.C. § 7203. He was not charged with willful failure to file or pay his 2007 taxes or willful failure to file his 2010 taxes.

---

[33] Mot. for Summ. J. Ex. 104 (Doc. No. 46-6) at 1.

[34] *Id.* at 2.

[35] Mot. for Summ. J. Ex. 105 (Doc. No. 46-8).

[36] *Id.*

"[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Anderson v. Comm'r*, 698 F.3d 160, 164 (3d Cir. 2012) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). Preclusion applies only if four conditions are met: (1) the issue decided in the prior action is the same as the one presented; (2) the issue was actually litigated; (3) it was determined by a final judgment; and (4) the determination of the issue was essential to the prior judgment. *Anderson*, 698 F.3d at 164.

> Section 7203 provides:
>
> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who *willfully fails to pay such estimated tax or tax*, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution.

26 U.S.C. § 7203 (emphasis added).

Willfulness is an essential element of the offense of failure to pay taxes under Section 7203. To prove willfulness in a criminal case, the government must prove that the defendant's failure was "a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12 (1976). Willful neglect in a civil failure-to-pay case is defined as "a conscious, intentional failure or reckless indifference." *E. Wind Indus.*, 196 F.3d at 504. A criminal conviction for violation of Section 7203 establishes willfulness in a subsequent civil tax suit. *Cf. Anderson*, 698 F.3d at 164 (in fraud and tax evasion context).

9

Fattah's criminal conviction for failure to pay his 2010 taxes precludes him from claiming that his failure to pay his 2010 taxes was not willful. The four conditions for issue preclusion are met: (1) willfulness was an issue in the criminal case; (2) it was actually litigated; (3) a jury found him guilty of willfully failing to pay his taxes; and (4) willfulness was a required element for conviction under 26 U.S.C. § 7203. Because Fattah is precluded from contesting that his failure to pay his 2010 taxes was willful, he cannot succeed on his claim for a refund of civil penalties for failing to pay his 2010 taxes.

Although Fattah is precluded from asserting that his failure to pay his 2010 taxes was not willful, his conviction does not preclude him from claiming that his failure to file his 2007 and 2010 returns and to pay his 2007 taxes on time was not willful. Hence, we shall address those failures.

Reasonable Cause

To qualify for a refund of penalties, the taxpayer must demonstrate that he was unable to timely file his tax returns or pay his taxes on time despite having exercised ordinary business care and prudence. With respect to a failure to timely pay, he must also show that he was unable to pay the tax or that he would have suffered an undue hardship if he paid them. *E. Wind Indus.*, 196 F.3d at 509.

Under IRS regulations, reasonable cause exists where

> the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time . . . . A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date.

Treas. Reg. § 301.6651-1(c)(1).

Fattah has given conflicting reasons for failing to meet the 2007 tax filing deadline. In his request for a refund, he wrote that he "was under the impression that he did not have a liability in 2007."[37] Asked in his deposition why he did not file in 2007, he stated, "I wasn't thinking about it. I mean honestly just the thought never crossed my mind. . . . I ultimately thought I had a duty to file, but I didn't think there was any penalty for not filing at that time. People file late as far as I know."[38] He later added, "I also firmly believed that my expenses offset my income so that there's no – there may be no taxable income to file a return based on that. . . . My understanding was you have to file a return if you have a higher than a certain income."[39]

Fattah's excuse is based upon his nonchalance and proclaimed misunderstanding. A mere belief that no tax was due, without more, is not reasonable cause for a failure to file. *See Estate of Thouron*, 752 F.3d 311, 315 (3d Cir. 2014); *see also In re Rosemiller*, 188 B.R. 129, 139 (Bankr. D.N.J. 1995).

Fattah owed taxes for 2007. When he ultimately filed his 2007 tax return more than four years after it was due, it showed $27,035 adjusted gross income and a $6,211 tax liability for the year.[40] The IRS applied a tax credit from his 2011 taxes against his 2007 taxes and associated penalties and interest.[41]

As we have noted, Fattah gave conflicting excuses for not filing his 2007 tax

---

[37] Mot. for Summ. J. Ex. 101 (Doc. No. 46-3) at ECF 2.

[38] Fattah Dep. pt. 1 at 142:18–19, 142:25–143:3.

[39] *Id.* at 145:16–21.

[40] Mot. for Summ. J. Ex. 104 at 1.

[41] *Id.* at 2.

11

return on time. On one hand, he stated that he was not "thinking about it." On the other, he believed he did not have to file because he did not meet an income threshold. Either reason demonstrates that Fattah did not act with ordinary business care and prudence when he failed to timely file his 2007 tax return.

Fattah also claims that, with respect to his 2007 taxes, he "was told that he was getting a refund and would not be penalized for late filing if a refund is due."[42] This advice came long after the tax deadline. In his deposition, he testified that it was the Taxpayer Advocate Service that advised him that he was "eligible" for a refund of his 2007 taxes.[43] He did not file a request for Taxpayer Advocate Service assistance until October 28, 2013, more than five and a half years after his 2007 tax return was due.[44] He did not contact an accountant about his 2007 taxes until November 2010, more than two and a half years after his 2007 tax return was due.[45] He cannot rely on these sources, whom he contacted long after the filing deadline, as justification for his failure to file a timely return.

With respect to his failure to file his 2010 tax return, Fattah claimed in his request for abatement that he "relied on his previous accountant to file an extension to file his 2010 tax return as well as file his tax return timely."[46] But, the accountant did not give Fattah his tax returns to file because Fattah never paid him.[47] Instead, the accountant

---

[42] Mot. for Summ. J. Ex. 101 at ECF 2.

[43] Fattah Dep. pt. 1 at 157:4–5.

[44] Pl.'s Reply to Defs.' Mot., & Br., to Dismiss Claims & for Summ. J. Ex. 14 (Doc. No. 15-18).

[45] Fattah Dep. pt. 1 at 155:7–10.

[46] Mot. for Summ. J. Ex. 101 at ECF 2.

[47] Mot. for Summ. J. Ex. 103 (Doc. No. 46-5) at ECF 2.

prepared extensions, which Fattah did not file.[48]

A taxpayer's duty to file a timely tax return is nondelegable. Reliance on an agent does not excuse an untimely filing. *Boyle*, 469 U.S. at 248, 252. In other words, a taxpayer may rely on the advice of an attorney or accountant in preparing his tax return, but he alone is responsible for meeting the filing deadline. *Id.* at 251; *see also Thouron*, 752 F.3d at 314–15 (applying *Boyle* to failure-to-pay case).

Fattah's alleged reliance on his accountant is not an acceptable excuse. It was Fattah's, not his accountant's, duty to ensure that his tax return was timely filed. Fattah had no reasonable cause for his failure to file his 2010 tax return.

Nor did Fattah have reasonable cause to excuse his failure to pay his 2007 taxes. He must show both that he acted with ordinary business care and prudence, and he would have suffered an undue hardship. Treas. Reg. § 301.6651-1(c)(1); *E. Wind Indus.*, 196 F.3d at 509. In determining whether Fattah acted with ordinary business care and prudence, we consider the facts and circumstances bearing on his financial situation. *E. Wind Indus.*, 196 F.3d at 510 & n.10.

Fattah had hired accountants and lawyers for his taxes in 2002, 2003, and 2004.[49] He did not seek the advice of an accountant about his 2007 taxes until approximately November 2010, more than two and a half years after his 2007 tax returns had been due.[50] He then waited another year and a half to file his 2007 tax return on July 17, 2012.[51] He claimed, without proffering any evidence to support his

---

[48] Mot. for Summ. J. Ex. 203 (Doc. No. 46-11).

[49] Fattah Dep. pt. 1 at 155:17–24.

[50] Fattah Dep. pt. 1 at 155:7–10.

[51] Mot. for Summ. J. Ex. 104.

13

contention, that he did not believe he owed any tax liability. Indeed, the evidence is to the contrary. When he did file his 2007 tax return, it showed a $27,035 adjusted gross income and a $6,211 tax liability for the year. He has not identified any person conversant with tax accounting and tax law who advised him that he had no tax liability or did not need to file a return. *See Thouron*, 752 F.3d at 315. Hence, he has failed to meet his heavy burden for a refund of his civil penalties.

Even if Fattah could show that he acted with ordinary business care and prudence, he still could not show undue hardship. He claimed that he had reasonable cause not to file or pay "based on an inability to pay."[52] He has not offered any support for his statement.[53]

Fattah contests the United States's motion by insisting that we have already held that it is not entitled to summary judgment on his refund claims. We did not reach the merits of Fattah's refund claim. The decision was based on the government's argument that we lacked jurisdiction because Fattah filed his civil action before waiting six months after filing his refund claim with the IRS. The Internal Revenue Code requires that a taxpayer must first make a claim for a refund or credit to the IRS, 26 U.S.C. § 7422(a), and wait six months for the IRS to decide the claim before filing suit, *id.* § 6532(a)(1). Only if the IRS decides the claim before the six-month period runs may the taxpayer commence an action. *Id.* Because the government did not contradict Fattah's contention that the IRS had "rendered a decision" on the refund claim before he filed his action, we denied summary judgment.[54] The disputed material fact that precluded

---

[52] Fattah Dep. pt. 1 at 143:11–13.

[53] *E.g.*, Mot. for Summ. J. Exs. 101, 102.

[54] Mem. Op. (Doc. No. 22) at 27–28.

summary judgment was whether the IRS had rendered a decision within the mandatory six-month waiting period.

Fattah, despite having been warned that the United States's statement of undisputed material facts would be deemed admitted unless disputed, has not contradicted any facts stated by the government regarding the refund claim. Nevertheless, we have considered the entire record in the light most favorable to Fattah and have drawn all reasonable inferences in his favor. Still, there is no real dispute of material facts and the government is entitled to judgment as a matter of law on the refund claims.

*Damages for Wrongful Disclosure*

Section 6103 proscribes the disclosure of any tax or tax return information by any United States officer or other person with access to tax returns obtained by him in any manner in the course of his or her employment, "or otherwise or under the provisions of [Section 6103]." 26 U.S.C. § 6103(a). A taxpayer may bring a civil action for damages arising from the prohibited disclosure of his tax information in violation of Section 6103. *See id.* § 7431.

Liability for wrongful disclosure is not disputed. Damages are. The United States concedes that a wrongful disclosure of return information occurred on February 29, 2012. It argues that Fattah cannot prove actual or punitive damages.

Section 7431 provides that, upon a wrongful disclosure, a defendant is liable for damages in the amount of the greater of either (1) $1,000 for each unauthorized disclosure, or (2) "actual damages sustained by the plaintiff as a result of such unauthorized . . . disclosure, plus . . . in the case of a willful . . . disclosure or a[] . . .

15

disclosure which is the result of gross negligence, punitive damages." *Id.* § 7431(c)(1).

Fattah claims $5,224,667 in actual damages. He seeks over $1,000,000 in economic damages. Specifically, he seeks damages for projected gross business income in 2012, 2013, and 2014, the three full calendar years from the 2012 wrongful disclosure to his 2014 indictment; annual health insurance benefits for 2012, 2013, and 2014; legal fees "related to new business"; "business planning fees"; lost tuition fees; and lost capital gains on a condominium he intended to purchase. He also claims $4,000,000 in non-economic damages for loss of reputation.[55] In addition, Fattah asks for punitive damages.

Fattah must prove that his damages were the result of the disclosure. He must show that the claimed damages were the actual and proximate cause of the disclosure. *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 529 (E.D. Va. 2014); *Jones v. United States*, 9 F. Supp. 2d 1119, 1137 (D. Neb. 1998); *see also Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). Thus, he must demonstrate that the damages would not have occurred but-for the disclosure, and the harm was foreseeable and within the scope of the risk created by the disclosure. *See Paroline*, 134 S. Ct. at 1719.

Actual Damages

Fattah contends that, as a result of the disclosure that he was under investigation, he was fired from his job with David Shulick. The United States claims he quit. The parties present competing versions of what happened immediately after the news of the execution of the search warrants hit the media.

---

[55] Resp. at 11.

According to Fattah, Shulick terminated his contracts after media coverage of the searches.[56] Fattah testified that, in a phone call after the news broke, Shulick instructed him "not to go [to the 1:00 P.M. meeting], not to go to his office or contact anybody by the company, not to go to any location."[57] Fattah has previously alleged that news coverage of the searches began with a *Philly.com* article published at 11:52 A.M.,[58] after Shulick dictated the 11:22 A.M. email telling Fattah to report to the 1:00 P.M. meeting.

The United States contends that Shulick terminated the business relationship with Fattah because Fattah stopped going to work. According to Shulick, Fattah "never showed up again" after the execution of the search warrants.[59] On the morning of the search, Shulick sent the 11:22 A.M. email to Fattah, stating, "As far as this company is concerned you are still employed, and at 1 PM you David, Mark, Ann and Cherie are expected to be discussing pipeline work."[60] Fattah admits he did not attend the meeting.[61] In his deposition, Shulick stated that he "was bombarded with media coverage," but could not remember whether media coverage had started by the time he dictated the email to Fattah.[62]

Shulick stated that the searches and media coverage were "irrelevant" to Fattah's

---

[56] Mot. for Summ. J. Ex. 201B (Doc. No. 46-9) ("Fattah Dep. pt. 2") at 5:13–6:19.

[57] Fattah Dep. pt. 1 at 187:16–18.

[58] Am. Compl. ¶ 26; Pl.'s Reply to Defs.' Mot., & Br., to Dismiss Claims & for Summ. J., Ex. 2.

[59] Shulick Dep. at 29:15–16.

[60] Mot. for Summ. J., Ex. 212 (Doc. No. 46-20).

[61] Fattah Dep. pt. 1 at 187:16.

[62] Shulick Dep. at 27:10–11, 27:25–28:3, 29:22–24.

termination.[63] He stated that he "never heard from Mr. Fattah again after the raid."[64]

These conflicting versions of why and how Fattah's business relationship with Shulick ended preclude summary judgment on the issue of Fattah's actual damages. Resolution of the conflict turns on a credibility determination to be made by the fact finder.

At this stage, we cannot conclude that Fattah will be unable to prove non-economic damages, such as damages for loss of reputation. He will be given the opportunity to prove both economic and non-economic damages at trial. Then, if he does prove non-economic damages, we shall address whether they are recoverable.

### Punitive Damages

Fattah also asks for "punitive damages in an amount equal to five times the actual damages total determined at trial."[65] Section 7431 precludes punitive damages absent a showing of actual damages. *See Siddiqui v. United States*, 359 F.3d 1200, 1203–04 (9th Cir. 2004); *cf. Snider v. United States*, 468 F.3d 500, 510 (8th Cir. 2006) (precluding punitive damages with an award of Section 7431 statutory damages). The statute provides for actual damages "plus" punitive damages, suggesting that an award of punitive damages is in addition to actual damages. *See* 26 U.S.C. § 7431(c)(1)(B).

Fattah is not entitled to punitive damages until he shows actual damages. He has not yet done so. If he proves actual damages, he must then demonstrate that the wrongful disclosure was willful or the result of gross negligence before he can recover punitive damages. 26 U.S.C. § 7431(c)(1)(B); *see also Minda v. United States*, 851

---

[63] Shulick Dep. at 28:21–22.

[64] Shulick Dep. at 26:10–11.

[65] Resp. at 11.

F.3d 231, 237–38 (2d Cir. 2017). Because Fattah may still prove economic damages and may be able to show that the disclosure was willful or grossly negligent, we shall deny the United States's motion for summary judgment with respect to punitive damages.

## Conclusion

We shall grant the United States's motion in part and deny it in part. We shall grant summary judgment on Fattah's claims for refund of tax penalties. But, we shall deny summary judgment on Fattah's claims for damages as a result of the wrongful disclosure.

/s/ Timothy J. Savage
TIMOTHY J. SAVAGE, J.