**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHAKA FATTAH, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA and** | : | |
| **INTERNAL REVENUE SERVICE** | : | **NO. 14-1092** |

**<u>FINDINGS OF FACT</u>**

**NOW**, this 27th day of July, 2017, after a bench trial and having had the opportunity to observe the demeanor of the witnesses and to evaluate their credibility, I make the following findings of fact and conclusions of law:

1.     In the pre-dawn of February 29, 2012, when federal agents executed a search warrant at Chaka Fattah, Jr.'s home, members of the press were already there.

2.     Later that morning, federal agents executed search warrants at Shulick Law Offices, where Fattah had an office, and at a school operated by Delaware Valley High School ("DVHS"), where he provided consulting services.

3.     Prior to the execution of the warrants, an FBI special agent wrongfully disclosed to a reporter when and where the search warrants concerning Fattah were to be executed.

4.     The FBI agent did not act willfully nor with gross negligence when he made the wrongful disclosure.

5.     By late morning, *philly.com* published a news article and photographs reporting that the IRS was investigating Fattah's company, 259 Strategies, LLC.

6.     Later, numerous news articles reporting the searches were published.

7.     At the time of the searches, one of Fattah's companies, Legal Marketing

Strategies, LLC, had an exclusive contract to manage marketing and development for Shulick Law Offices, Delaware Valley High School (DVHS), and the Judith B. Shulick Memorial Foundation.

8.     Fattah's only source of income at the time of the searches was the contract between Legal Marketing Strategies and Shulick Law Offices.

9.     Shulick Law Offices agreed to pay Legal Marketing Strategies $144,000, at the rate of $12,000 per month.

10.     The contract provided that Fattah could have received a discretionary bonus to pay off his student loan debt if he "manifests a successful outcome to the DVHS Client Project, implements DVHS Client Marketing Plan with fidelity, and the Shulick Law Marketing Plan and Strategic Business Plan, with fidelity."

11.     The contract did not provide for healthcare or other benefits.

12.     Fattah did not speak to David Shulick after the searches nor did he respond to Shulick's emails.

13.     Although Shulick advised him that he was still employed at Shulick Law Offices, Fattah did not return to work after the searches.

14.     Shulick Law Offices did not fire Fattah as a result of media coverage of the searches.

15.     Fattah, without explanation, stopped showing up to work after the search warrants were executed.

16.     After the searches, Fattah quit his job with Shulick Law Offices by not returning to work.

17.     On March 2, 2017, two days after the searches, Fattah represented to the

School District of Philadelphia's Inspector General that he was employed by Shulick Law Offices.

18.     Earlier in February 2012, Fattah made a presentation to the School District of the City of York in an effort to secure a contract between DVHS and the School District, but the effort was unsuccessful.

19.     The School District of the City of York did not enter into a contract with DVHS.

20.     Fattah did not bring in any business to DVHS entitling him to a bonus.

21.     Prior to the searches, Fattah was planning to leave Shulick Law Offices for new employment or to start his own business, Dreamchasers.

22.     Dreamchasers was only a concept and did not progress beyond the conceptual stage.

23.     Whether Fattah could have attracted investors and secured contracts for Dreamchasers is speculative.

24.     Fattah did not complete two of his three classes at Drexel University during winter quarter 2012.

25.     His failure to complete the courses was not caused by the wrongful disclosure, but his own fault.

26.     Fattah ultimately moved out of his condominium at the Residences at the Ritz-Carlton.

27.     His inability to pay rent and to purchase another condominium was the result of his quitting his job at Shulick Law Offices and DVHS.

28.     In the summer 2012, the contract between DVHS and the School District

of Philadelphia was not renewed.

29.     Fattah has not proven that his reputation was damaged as the result of the media coverage of the searches.

30.     Fattah was indicted on July 29, 2014.

31.     On November 5, 2015, Fattah was convicted on twenty-two counts, including false statements to obtain loans, bank fraud, wire fraud, filing false income tax returns, failing to pay federal income tax, and theft from a program receiving federal funds.

32.     On February 2, 2016, Fattah was sentenced to five years in prison and ordered to pay $1,172,157.00 in restitution.

33.     Fattah did not suffer any actual damages as a result of the wrongful disclosure.

34.     Any losses Fattah sustained were the result of his failure to return to work at Shulick Law Offices and his own criminal conduct.

## CONCLUSIONS OF LAW

1.     Section 6103 proscribes the disclosure of any tax or tax return information by any United States officer or other person with access to tax returns obtained by him in any manner in the course of his or her employment, "or otherwise or under the provisions of [Section 6103]."  26 U.S.C. § 6103(a).

2.     Section 7431 provides that, upon a wrongful disclosure in violation of Section 6103, a defendant is liable for damages in the amount of the greater of either (1) $1,000 for each unauthorized disclosure, or (2) "actual damages sustained by the plaintiff as a result of such unauthorized . . . disclosure, plus . . . in the case of a willful .

. . disclosure or a[] . . . disclosure which is the result of gross negligence, punitive damages." *Id.* § 7431(c)(1).

3.      The disclosure to the media of the time and date the search warrants were to be executed was a wrongful disclosure in violation of Section 6103.

4.      To recover actual damages for a wrongful disclosure, a plaintiff must show that the claimed damages were the actual and proximate cause of the disclosure. *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 529 (E.D. Va. 2014); *Jones v. United States*, 9 F. Supp. 2d 1119, 1137 (D. Neb. 1998); *see also Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014).

5.      Fattah has not proven that the wrongful disclosure actually and proximately caused him any damages.

6.      Fattah has not demonstrated direct, economic damages as a result of the wrongful disclosure.

7.      Fattah has not proven that the media coverage of searches was the actual or proximate cause of his failure to attend classes at Drexel University.

8.      The publicizing of the execution of the search warrants was not the proximate cause of Fattah's losing his contract with DVHS.

9.      Fattah's claim for reputational damages is speculative.

10.     Fattah has not established that the wrongful disclosure was the actual or proximate cause of his alleged loss of business income, potential future income, lost bonus, lost healthcare benefits, lost legal fees, lost business planning fees and tuition.

11.     There is no evidence from which we can determine what contracts, if any, Fattah's yet-to-be-formed business might have won, or what income, if any, Fattah

might have earned.

12.    Fattah has not provided evidence of non-economic damages, such as reputational damages, as a result of the wrongful disclosure.

13.    Because Fattah has not demonstrated actual damages, he is not entitled to punitive damages.  *See Siddiqui v. United States*, 359 F.3d 1200, 1203–04 (9th Cir. 2004); *cf. Snider v. United States*, 468 F.3d 500, 510 (8th Cir. 2006) (precluding punitive damages with an award of Section 7431 statutory damages).

14.    Because Fattah has not demonstrated actual damages, he is entitled only to statutory damages of $1,000.  26 U.S.C. § 7431(c)(1)(A).

15.     "If a person obligated to provide restitution . . . receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution . . . still owed."  18 U.S.C. § 3664(n).

16.    Fattah's damages shall be offset against his restitution order.


                                                      /s/TIMOTHY J. SAVAGE